IN

# THE SUPREME COURT

OF

# THE STATE OF MISSOURI,

MARCH TERM, 1863, AT ST. LOUIS.

———•–□–•———

WILLIAM A. McMURRAY, Respondent, *v.* THE ST. LOUIS OIL MANUFACTURING COMPANY *et al.*, Appellants.

*Corporations.*—Corporations are not prohibited by § 2, ch. 37, R. C. 1855, p. 385, from giving a mortgage or lien upon property they may purchase. The provision of the act applies only to property the corporation may already own.

*Equity—Mistake.*—Parties must abide the consequences of mistaking the law when they have knowledge of the facts.

*Judgment—Corporation.*—A judgment confessed by the president of a corporation without service of process, and without the order or knowledge of the directors or company, and not setting forth the cause of the indebtedness, is void.

### Appeal from St. Louis Land Court.

On the 25th day of March, A. D. 1854, plaintiff conveyed to the St. Louis Oil Manufacturing Company the lot of ground described in plaintiff's petition. The consideration for this sale was seven thousand five hundred dollars. Of this amount five thousand dollars was paid by issuing shares of capital stock of said company to plaintiff, and the balance, two thousand five hundred dollars, was to be paid on or before the first day of March, 1856, with interest from March 1, 1854, at six per cent., and a note was given of that tenor.

In order to secure the payment of the deferred purchase money, the lien of the plaintiff for this unpaid purchase money was set forth in the conveyance, and the vendor was authorized to sell the land upon thirty days' notice, to pay the debt secured. The deed was duly recorded.

On the 14th day of March, A. D. 1857, William Hassinger, president of the company, without any authority from the stockholders or board of directors of the corporation, filed a statement confessing judgment on the above described note, and thirty-four dollars and seventy-five cents, the amount of taxes paid by McMurray for the corporation. The statement did not show the consideration of the note.

Judgment was rendered on this confession in the St. Louis Court of Common Pleas, on the 14th day of February, 1857; an abstract thereof filed in the clerk's office of the Land Court February 20, 1857; execution issued thereon April 10, 1857.

After the rendition of the above judgment, other judgments were rendered in favor of other plaintiffs against the same defendants for the amounts in favor of the parties, and abstracted in the clerk's office of the Land Court as follows, to wit:

"Wm. A. Reed v. Oil Company.—Common Pleas.—Judgment, $4,558.32, Feb. 20, 1857; abstracted, Feb. 20, 1857; execution issued, Feb. 28, 1857.

"W. C. Logan v. Oil Company.—Circuit Court.—Judgment, $1,019.21, March 17, 1857; abstracted, April 23, 1857; execution issued, March 28, 1857.

"Rees H. Jones v. Oil Company.—Before Justice Allen.—Judgment, $107.73; transcript filed with clerk of Land Court, March 24, 1857.

"Humphreys, Tutt & Terry v. Oil Co.—Circuit Court.—Judgment, $1,283.97, March 27, 1857; abstracted, March 28, 1857; execution issued, April 1, 1857.

"Rogers v. Oil Co.—Judgment for $173.45; abstracted, April 11, 1845; execution issued, April 11, 1857.

"Illsley v. Oil Co.—Judgment, April 14, 1857, $3,035.28; abstract, April 16, 1857; execution, April 15, 1857.

"Hale v. Oil Co.—Judgment for $519.43, April 15, 1857; abstracted, April 16, 1857; execution issued, April 15, 1857."

The execution issued on the judgment in favor of Reed was levied upon the real estate described in plaintiff's petition, which was sold by the sheriff on the 15th day of April, A. D. 1857, and Humphreys, Tutt & Terry became the purchasers of the interest of the St. Louis Oil Manufacturing Company for nine thousand one hundred and fifty dollars, and the sheriff executed a deed to them.

The plaintiffs, in two of said judgments, to wit, Arthur M. Illsley and S. & J. Hale, after the payment of the money to the sheriff, moved the Court of Common Pleas to exclude McMurray from any participation in this fund of nine thousand one hundred and fifty dollars, which motion was sustained, and the court ordered the balance left, after satisfying the judgment in favor of Reed, to be applied as follows, to wit:

"1. To costs of motion, $12.50; 2. Humphreys, Tutt & Terry's judgment, $1,351.38; 3. Wm. C. Logan's judgment, $1,074.05; 4. Rogers & Noel's judgment, $182.12; 5. S. & J. Hale's judgment, $545.40; 6. A. M. Illsley's judgment, $1,287.48; 7. That the receivers appointed by the court during the pendency of the motion (Humphreys, Tutt & Terry,) retain in their hands, subject to order of court, $226.66."

Afterwards, the receivers were ordered to pay to Rees H. Jones, on his judgment, $133.33.

Plaintiff then brought this suit in the Land Court against the St. Louis Oil Manufacturing Company and Humphreys, Tutt & Terry to foreclose under the vendor's lien retained by him.

On the trial, the plaintiff offered in evidence the deed from McMurray to the Oil Company, with the certificate of record and the note above described.

Plaintiff also offered in evidence sheriff's deed to Humphreys, Tutt & Terry.

Defendants offered in evidence the various statements of

judgments rendered against the St. Louis Oil Manufacturing Company, with the dates of abstracting and the dates of the issue of execution, and the sheriff's deed to Humphreys, Tutt & Terry. Also, the confession of judgment in favor of McMurray, and the statement under which the same was rendered. They also offered in evidence the execution in favor of McMurray, with the sheriff's return. Also, the order of distribution of the Court of Common Pleas of the proceeds of the sale of the property in question under Reed's judgment.

Defendants then introduced William T. Wood as a witness, who testified that he was an attorney at law, and acted as such for Humphreys, Tutt & Terry in securing their claim against the St. Louis Oil Manufacturing Company; that he took the execution in favor of Humphreys, Tutt & Terry to the sheriff's office and found four executions there against the Oil Company. Tutt got him to examine the title before the sheriff's sale, to see what was the amount of the liens on it prior to their judgment, and make a calculation to see how much he would have to bid to save his debt. The amount which he calculated included McMurray's judgment, and the amount bid by him was sufficient to pay off all prior liens and judgments. Plaintiff's attorney, after the sale, claimed the proceeds in sufficient amount to satisfy his judgment. I aided plaintiff's attorney to obtain the same. The court decided against him, and he did not appeal from the order of distribution. The funds were distributed among the creditors having judgments subsequent to plaintiff's. He advised Humphreys, Tutt & Terry that the judgment of confession in favor of McMurray was a valid one; that he did not see Mc-Murray or his attorney at the sheriff's sale.

No instructions were given on behalf of the plaintiff.

The following instructions asked by the defendants were refused:

"1. If the plaintiff commenced legal proceedings in the Court of Common Pleas on the note described in the petition, and a judgment was rendered in said court on said note in favor of said plaintiff and against said St. Louis Oil Manufac-

turing Company; that execution issued on said judgment and was delivered to the sheriff of St. Louis county; that other judgments were rendered against said company, upon which executions were issued and delivered to the sheriff of said county; that the sheriff of said county sold said premises described in the petition under the execution in favor of William H. Reed; that Thomas E. Tutt, one of the defendants, under legal advice, bid at said sheriff's sale the amount of all the judgments and costs against said company, including the said judgment in favor of the said plaintiff, and that said Tutt purchased said property at said sale at said amount, and the sheriff made a deed to him for the same; that said Tutt believed he was purchasing said property free and clear of said lien claimed by said plaintiff and employed attorneys to take legal steps to obtain payment of said claim out of the proceeds of said sheriff's sale; that said attorney took legal steps to obtain said money, then the plaintiff cannot recover.

"2. Under the charter of the St. Louis Oil Manufacturing Company, the plaintiff has no lien upon the property described in the petition for the amount as claimed in said petition."

A decree was rendered in favor of plaintiff.

Defendants then moved for a new trial, and moved in arrest of judgment, both of which motions were overruled, and they then took their appeal.

*Lackland, Cline & Jamison,* for appellants.

I. The act of March 12, 1849, (Acts of 1848–9, p. 18,) authorizing the formation of corporations for manufacturing, mining, mechanical or chemical purposes, provides, in § 2, that a corporation created under that act shall " be capable in law of purchasing, holding and conveying any real and personal estate whatever, which may be necessary to enable the said company to carry on their operations, * * * but shall not mortgage the same or give any lien thereon."

II. The intention of that act was to prevent a corporation formed under it from entering into any contract in relation to its real estate whereby such real estate should be subject

25—VOL. XXXIII.

to a mortgage or lien. It was, therefore, no more competent for the company to buy real estate and accept a deed for it in the form resorted to in this case than to receive an absolute conveyance and then execute a mortgage of the property, for the deed in question was merely a conveyance of the property to the company, with a mortgage back to the grantor, as real and effective as if such mortgage had been created by a separate deed. (Carr v. Holbrook, 1 Mo. 240.)

III. There was no reservation of a part of the estate, but an absolute conveyance of the whole. This lien, whether it be considered as a vendor's lien or as a lien imposed by way of mortgage, could not have existed without having been given by the company as a part of the contract of sale, and to give any such lien was in direct violation of the terms of the act in question, and therefore void and not capable of enforcement either at law or in equity. (Weed v. Snow, 3 McLean, 265; Root v. Wallace, 4 McLean, 8; Davis v. Bank River Raisin, *id.* 387; Bank Commissioners v. St. Lawrence Bank, 7 N. Y. 513; Ewing v. Osbaldiston, 2 Mylne & Craig, 53.)

IV. It is a well settled principle of the common law that no court of justice will lend its aid to enforce the performance of any contract or agreement which was intended by the parties thereto to contravene the provisions of a positive law. (Pratt v. Adams, 7 Paige, 615–653; Hanson v. Power, 8 Dana, 91; Cowman v. Segswich, 1 Hoff. 60.)

V. There is no equity in the plaintiff's enforcement of this lien against Humphreys, Tutt & Terry, who bought the property at sheriff's sale. They bid for the property at the sale enough to cover all existing judgment liens on it, among which was a judgment of the plaintiff against the company, rendered upon confession by the latter. The plaintiff, however, failed to obtain payment of his judgment, because, as between him and subsequent judgment creditors, the judgment was not entered in conformity to law, and was therefore debarred from participating in the proceeds of the sale. When, therefore, Humphreys, Tutt & Terry bid at the sale,

and paid to the sheriff a sum sufficient to cover all judgments, and the plaintiff was, by the defective character of his own judgment, prevented from receiving payment, it is inequitable and unjust that they should be compelled to pay a second time what they have already paid once, and from which he derived no benefit, merely because of the defect in his own proceedings.

*Smith & Sedgwick*, for respondents.

I. Under the R. C. 1855, p. 385, § 2, the corporation having once obtained a clear title, could not create a lien by mortgage or deed of trust, nor perhaps by any confession of judgment; but in the present instance the corporation did not give any lien. McMurray reserved an estate in the property conveyed; or, in other words, the law gave him his vendor's lien. It was no more a lien given by the corporation than if they had suffered judgment to go against them on an action regularly instituted by process. It is the law that gave the lien.

II. The confessed judgment was a nullity even as between the parties. The president does not pretend that he had any authority to confess it. It purports to be his own act for the corporation, but not by its authority.

The president of a corporation has no right to confess judgment against it without authority from the board.

If defendants rely upon the case of Chamberlain v. The Monmouth Mining Company, (20 Mo., p. 96,) the court does not there say that the president of a corporation can confess judgment, but it says he was competent to confess an action. The law makes a broad distinction between confessing an action already pending and confessing a judgment.

Again, even if the president had had authority and that authority had been shown on the record, the statement itself is so defective that the judgment is utterly void as to third persons, junior judgment creditors. It does not state concisely the facts out of which the indebtedness arose. It refers only to a promissory note, and judgments rendered upon such

statements are held to be void as to junior judgment creditors, and the Court of Common Pleas was right in excluding McMurray from any portion of the fund raised so long as there were other judgment creditors that desired it, and an appeal to this court from such order of distribution would have been of no avail. (Bryan v. Miller, 28 Mo., p. 33, and New York cases there cited.)

III. There might be still another ground to claim that McMurray's judgment in the Court of Common Pleas was of no value. Corporations like this could give no lien where they confessed judgment, even had the president received authority and the statement been such as the law requires, yet the confession is giving a lien. If defendants reply that the law gives the lien, it may be answered that the corporation gives the judgment, and then the lien attaches, which is virtually giving the lien.

IV. Defendants have attempted to show some equities in their favor, by representing that they had employed counsel, and that counsel advised them that McMurray's judgment was good. It seems, then, that before the sheriff's sale they had their attention called not only to the fact that McMurray had a lien, but they took advice of counsel as to the validity of McMurray's judgment. The fact that counsel erroneously told them that McMurray's judgment was good is certainly nothing in their favor. Equity will not insure the correctness of counsel's advice, nor shape its decrees to consistency with it.

On the ground of marshalling of assets, the Court of Common Pleas was right in excluding McMurray. There were two kinds of assets to which McMurray might claim a right, but only one to which the other judgment creditors were entitled. If McMurray had taken his claim from the proceeds of this sale, it would have excluded many who were entitled to their quota.

DRYDEN, Judge, delivered the opinion of the court.

The statute under which the Oil Company was formed for-

bids corporations organized under it from "mortgaging" their property or "giving any lien thereon," (ch. 37, § 2, R. C. 1855, p. 385,) and it is insisted by the defendants, Humphreys, Tutt & Terry, that the reservation in the deed from McMurray to the Oil Company is a mortgage or lien within the prohibition, and therefore inoperative and void. We cannot assent to this proposition. The provision was obviously intended to deprive those having the direction of the affairs of corporations of this kind of the power of using the corporate property so as to give preference to favorite creditors. The prohibitory words do not establish a rule to govern the acquisition of property, but intend a restraint in the use of property which the corporation already owns. The law does not design to exempt corporate property from *all* liens, but from such only as are created affirmatively by act of the corporation.

The lien reserved in the deed from McMurray comes within neither the letter nor the spirit of the prohibition.

As to the point that the plaintiff's case is without equity. This is based upon the ground that the defendants purchased the property in question supposing the plaintiff's judgment at law for the debt now sought to be enforced was a valid judgment, and that the sum they bid at the execution sale would, *pro tanto*, be applied to the extinguishment of the judgment debt; whereas the judgment was null and void, and all of the excess of the sum bid over and above what was requisite to satisfy the execution on which the sale was made was applied to junior judgments.

Admitting, what is true, that the plaintiff's common law judgment was utterly void, and that the money bid did not take the direction intended and desired by the defendants, yet no responsibility can, on this account, attach to the plaintiff. He was no party, but an entire stranger to the proceedings resulting in the defendant's purchase; the sale was not made under his judgment, nor was the error into which the defendants fell superinduced by any fault or misconduct of his. The defendants had the most ample notice of the existence of the plaintiff's debt and of the reservation in the deed

for its security. They deduce their title through the very deed on which the plaintiff's right rests, and as an inference of law they stand affected with notice of its contents. But more than this : before their purchase, as they show by their testimony, they caused the title of the property to be investigated and the amount of the encumbrances to be ascertained, to enable them to bid intelligently at the then approaching sale, which investigation resulted in information to the defendants of the existence of the plaintiff's present demand. The defendants knew the facts but mistook the law, and they must abide the consequences of their mistake.

The other judges concurring, the judgment of the Land Court is affirmed.